# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

ANTIONETTE COOPER,        )
       )
      Plaintiff,        )
       )
v.        )    Case No. 4:16-cv-01119-JEO
       )
NANCY BERRYHILL, Acting        )
Commissioner of Social Security,        )
       )
      Defendant.        )

## MEMORANDUM OPINION

Plaintiff Antionette Cooper brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Doc. 1).[1] The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference. The parties have consented to the jurisdiction of this court for disposition of the matter. (*See* Doc. 16). *See* 28 U.S.C. § 636(c), FED. R. CIV. P. 73(a). Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed.

---

[1]References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

# I. PROCEDURAL HISTORY

Plaintiff protectively filed her current DIB and SSI applications on January 7, 2013, alleging she became disabled beginning December 31, 2011. (R. 114-15, 221-24, 227-28). They were initially denied. (R. 123, 131-45). An administrative law judge ("ALJ") held a hearing on June 9, 2014 (R. 69-92) and issued an unfavorable decision on October 21, 2014 (R. 49-63). Plaintiff submitted additional evidence to the Appeals Council ("AC"). Upon consideration of the evidence, the Appeals Council found the information did not provide a basis for changing the ALJ's decision. (R. 2, 5-6). Plaintiff's request for review was denied on May 9, 2016. (R. 1).

# II. FACTS

Plaintiff was 52 years old at the time of the ALJ's decision. She has a high school education and has worked in the past as a janitor. (R. 46, 73, 90, 256). Plaintiff alleged onset of disability on December 31, 2011, due to anxiety, hypertension, thyroid problems, and an increased heart rate. (R. 74-75, 255).

Following a hearing, the ALJ found that Plaintiff had the following medically determinable impairments: anxiety, hypertension, thyroid nodule, and gastroesophageal reflux disease ("GERD"). (R. 51). He also found Plaintiff did not have an impairment or combination of impairments that met or medically

equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (R. 55). He further found Plaintiff retained the residual functional capacity ("RFC") to perform medium, unskilled work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) that did not require: (1) climbing ropes, ladders, or scaffolds; (2) work at unprotected heights or with hazardous machinery; (3) concentrated exposure to temperature extremes; (4) more than frequent interaction with co-workers and supervisors; and (5) more than occasional contact with the public. (R. 57). Based on that RFC finding and testimony from a vocational expert ("VE"), the ALJ concluded Plaintiff could perform her past relevant work as a janitor as well as other work that existed in significant numbers in the national economy such as a dishwasher, a hand packager, and a store laborer. (R. 61-62, 90-91). Accordingly, the ALJ determined Plaintiff was not under a disability, as defined in the Social Security Act, since December 31, 2011, through the date of his decision. (R. 62).

## III. STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of the court is to determine whether the Commissioner's decision is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct.

1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

The court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV. STATUTORY AND REGULATORY FRAMEWORK

To qualify for DIB and SSI under the Social Security Act, a claimant must show the inability to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

4

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); 42 U.S.C. § 1382c(a)(3)(D).

Determination of disability under the Social Security Act requires a five step analysis. 20 C.F.R. §§ 404.1520(a)(4). Specifically, the Commissioner must determine in sequence:

> whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in light of his residual functional capacity; and (5) can make an adjustment to other work, in light of his residual functional capacity, age, education, and work experience.

*Evans v. Comm'r of Soc. Sec.*, 551 F. App'x 521, 524 (11th Cir. 2014)[2] (citing 20 C.F.R. § 404.1520(a)(4)). The plaintiff bears the burden of proving that she was disabled within the meaning of the Social Security Act. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The applicable "regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability

---

[2]Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

to perform past relevant work."  *Id*.

## V.  DISCUSSION

Plaintiff argues four grounds of error: First, the AC failed to review her new submissions "**solely** because the records were dated after the date of [the ALJ's] decision";  Second, the ALJ failed to order a consultative evaluation; Third, the ALJ failed to state adequate reasons for finding Plaintiff not credible; and Fourth, the ALJ erred in finding Plaintiff can perform her past work.  (Doc. 9 at 1 (bold in original)).  Each argument will be addressed below, beginning with the challenges to the ALJ's decision.

### A.    Plaintiff's Credibility

Plaintiff argues the ALJ did not give adequate reasons for finding that her allegations of disabling symptoms were not entirely substantiated by the record. (Doc. 9 at 20-23 (Issue 3)).  She also argues that the medical evidence clearly establishes her disability.  (*Id*. at 23).  The Commissioner responds that the ALJ correctly applied the Eleventh Circuit's pain standard in evaluating Plaintiff's subjective complaints and substantial evidence supports the ALJ's finding that Plaintiff's subjective complaints were not entirely substantiated.  (Doc. 10 at 5-12).

### 1.    Generally

As noted in the previous section, Plaintiff bears the burden of proving that she is disabled within the meaning of the Social Security Act.  *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1512 (a) & (c), 416.912(a) & (c) (2015); *Moore, 405 F.3d at 1211*; *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). Specifically, Plaintiff has the burden to provide relevant medical and other evidence she believes will prove her alleged disability resulting from her physical or mental impairments.  *See* 20 C.F.R. §§ 404.1512(a)-(b), 416.912(a)-(b).  In analyzing the evidence, the focus is on how an impairment affects a claimant's ability to work, and not on the impairment itself.  *See* 20 C.F.R. §§ 404.1545(a), 416.945(a); *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) (severity of impairments must be measured in terms of their effect on the ability to work, not from purely medical standards of bodily perfection or normality).

In addressing a claimant's subjective description of pain and symptoms, the law is clear:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.  *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  If the ALJ discredits subjective testimony, he must articulate explicit and

> adequate reasons for doing so. *See Hale v. Bowen*, 831 F.2d 1007,
> 1011 (11th Cir. 1987). Failure to articulate the reasons for
> discrediting subjective testimony requires, as a matter of law, that the
> testimony be accepted as true. *See Cannon v. Bowen*, 858 F.2d 1541,
> 1545 (11th Cir.1988).

*Wilson*, 284 F.3d at 1225; *see also* 42 U.S.C. § 423(d)(5)(A), 20 C.F.R. §§

404.1529, 416.929.

When evaluating a claimant's statements regarding the intensity,

persistence, or limiting effects of her symptoms, the ALJ considers all the

evidence – objective and subjective. *See* 20 C.F.R. §§ 404.1529, 416.929. The

ALJ may consider the nature of a claimant's symptoms, the effectiveness of

medication, a claimant's method of treatment, a claimant's activities, measures a

claimant takes to relieve symptoms, and any conflicts between a claimant's

statements and the rest of the evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4),

416.929(c)(3), (4). The ALJ is not required explicitly to conduct a symptom

analysis, but the reasons for his findings must be clear enough that they are

obvious to a reviewing court. *See Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir.

1995). "A clearly articulated credibility finding with substantial supporting

evidence in the record will not be disturbed by a reviewing court." *Id.* (citation

omitted).

## 2.     Plaintiff's Claim

Plaintiff testified at her administrative hearing that she suffered from anxiety attacks.  The frequency of her attacks would vary.  On some days she would have two or three attacks.  At other times, she would have eight to ten attacks a week.  (R. 75).  She described the attacks as lasting up to "45 minutes or longer."  (R. 81).  They manifested in her running outside and taking off her clothes until she calmed down.  (R. 81-82).  The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible for the reasons explained in this decision."   (R. 58).  In reaching his decision, it is evident the ALJ properly considered the entire medical record.   (*See* R. 58-61).  *See also* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (the ALJ can consider the objective medical evidence among other factors when evaluating subjective complaints); Social Security Ruling (SSR) 96-7p, 1996 WL 374186, at *1 (ALJ must consider the objective medical record in assessing a claimant's statements).[3]  He concluded that the medical record did not fully support Plaintiff's allegations of frequent and persistent anxiety/panic attacks.  (R. 58, 75, 81-82).  The court agrees.

---

[3]SSR 96-7p was superseded by SSR 16-3p, effective March 28, 2016.  *See* SSR 16-3P, 2016 WL 1119029, at *1; SSR 16-3P, 2016 WL 1237954, at *1 (correcting the effective date).  As the ALJ's decision was issued in October 2014, the court is applying SSR 96-7p.

The ALJ noted the following medical evidence. Plaintiff was seen at Quality of Life Health Services, Inc. ("Quality of Life") in January and July 2012, and was negative for anxiety or psychiatric symptoms. (R. 58, 394, 403). When Plaintiff was seen at Gadsden Regional Medical Center in June 2012, she also was negative for any anxiety. (Tr. 58, 320). Although Plaintiff was found to have anxiety in October 2012, it was also noted that her anxiety was exacerbated by alcohol use. (R. 58, 414). She was "noted to be drinking a six-pack of beer per day and was encouraged to stop drinking alcohol." (R. 58, 415-17). By the time of the hearing, Plaintiff testified that she had decreased her alcohol use and she no longer uses alcohol on a daily basis. (R. 58, 76).

Plaintiff's treatment records from Quality of Life show she was maintained on Zoloft 50mg once daily, which the ALJ reasoned showed that her anxiety was stable. (R. 59, 398, 401, 405, 407-08, 411-12, 414-15, 417). *See* 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv) (ALJ may consider the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (ALJ properly considered claimant's medications). This evidence tends to refute Plaintiff's statements concerning the regularity and the intensity of her panic attacks.

In discounting Plaintiff's statements regarding the intensity of her condition, the ALJ also examined her other testimony. Specifically, he noted that Plaintiff testified that she had not sought mental health treatment since 2013.[4] (R. 59, 75). Consideration of her treatment history is appropriate, particularly since it does not support the intensity of the claimed condition. *See* 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v) (ALJ may consider treatment history). Plaintiff's conclusory statement in the opening brief that "the medical evidence clearly establishes her disability" is insufficient to challenge the finding of the ALJ on this issue. (Doc. 9 at 23). Presumably, Plaintiff is asserting that the evidence establishes that she is suffering from some type of panic disorder. However, neither the medical evidence nor her testimony supports a conclusion that she is suffering from a disabling condition in this regard.

To the extent that Plaintiff seeks to support her claim of a disability premised, in part, on the fact that she did not get along with others, the record does not support a disability finding. The ALJ noted that Plaintiff reported spending time talking to other people on a daily basis. (R. 59, 289). *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (noting an ALJ may consider daily activities in

---

[4]She stated that she "probably" went to the emergency room one time in 2013 and received a prescription. (R. 75).

assessing pain and other symptoms); *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (the ALJ may consider a claimant's daily activities). Plaintiff testified that she lived with her 16-year old daughter and spent time with her father. (R. 59, 77). She also reported that she had never been fired or laid off from a job because of problems getting along with other people. (R. 59, 291). Additionally, the evidence shows she worked after her purported onset date despite her claims of disabling symptoms. (R. 59, 73-74 (disaster relief work), 245 ($1,687.50 in income)). This evidence does not support her contention that she is disabled.

The ALJ also considered Plaintiff's allegation that she had dizziness two to three times per day because of her hypertension. (R. 60, 83-84, 86). However, the ALJ found that the objective medical evidence did not support Plaintiff's allegation. *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); SSR 96-7p, 1996 WL 374186, at *1. In January 2012, Plaintiff's hypertension was not in the target range, but she was described as non-compliant with her medications. (R. 60, 393). *See* 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv). Plaintiff's hypertension was described as benign when seen at Quality of Life in March 2012 and she was continued on her current medication. (R. 60, 398). In July 2012, she was again noted to be non-compliant with her blood pressure medication. (R. 60, 402). When seen in October 2012, her hypertension was described as getting worse. (R.

60, 414). However, the ALJ found that Plaintiff's medical notes demonstrate that her hypertension was exacerbated by heavy alcohol consumption, smoking, and anxiety. (R. 60, 414). Further, the ALJ noted that despite her allegations of disabling symptoms because of her hypertension, Plaintiff testified that she had not been to Quality of Life for treatment in 2014 and that she had not been to the emergency room since 2013. (R. 61, 75). *See* 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v). Additionally, as already noted, by the time of her hearing, Plaintiff had reported that she had drastically reduced her drinking. Still further, Plaintiff was negative for dizziness in March, June, July, and September 2012 when she was seen at Quality of Life. (R. 60, 373-74, 377, 399, 403, 411). When Plaintiff was seen at Gadsden Regional Medical Center in June 2012, she also was negative for dizziness. (R. 60, 320). She was also negative for dizziness when seen at ENM PC in October 2012. (R. 60, 441-42). Thus, the ALJ properly concluded that Plaintiff's complaints of persistent dizziness are not supported by the medical record or her testimony.[5] (R. 60).

To the extent Plaintiff's complaint of headaches are offered in support of a disability, the ALJ found she was negative for headaches when evaluated at

---

[5]The court also notes that the subsequent records submitted to the AC do not evidence any complaints of dizziness during 2015. (R. 9-30).

Quality of Life in March and September 2012. (R. 60, 398-99, 411). She was

negative for a headache in March 2012 when seen at ENM PC. (R. 60, 448). The

ALJ properly found that the objective medical evidence and Plaintiff's reported

activities of daily living did not support the level of limitation she alleged or a

finding that her anxiety produced symptoms so severe as to be disabling. *See*

*Foote*, 67 F.3d at 1562; *Mitchell*, 771 F.3d at 782. Nothing in the record refutes

this finding.

Plaintiff's conclusory challenge that the ALJ did not properly evaluate her

pain and other symptoms is without merit. The evidence simply does not indicate

that Plaintiff's conditions caused disabling limitations. Under the evidence, the

court cannot find that the ALJ was wrong in discrediting Plaintiff's testimony.[6]

*Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) ("[t]he

question is not ... whether [the] ALJ could have reasonably credited [claimant's]

testimony, but whether the ALJ was clearly wrong to discredit it").

## B.    Consultative Evaluations

Plaintiff next argues that the ALJ failed to develop the record by not

ordering a consultative examination to determine if her anxiety and panic

---

[6]Plaintiff's conclusory argument in her reply brief that "[t]he 'reasons' set out in the body of the decision by the ALJ are not adequate reasons for finding claimant not credible," adds nothing to this claim. (Doc. 11 at 10).

disorders met listing 12.06 (anxiety related disorders).[7]  (Doc. 9 at 19-20 (Issue 2)).

Plaintiff also argues the ALJ should have ordered a pulmonary function test

because she had "significant COPD [chronic obstructive pulmonary disease]."

(*Id*. at 20).  Plaintiff "requests a remand with instructions that the ALJ order a

psychological evaluation."  (*Id*.)  The Commissioner responds that Plaintiff's

arguments lack merit because the record does not contain an evidentiary gap that

resulted in unfairness or clear prejudice.  (Doc. 10 at 12).

An ALJ has a basic obligation to develop a full and fair record, and must

develop the medical record for the twelve months prior to the claimant's filing of

her application.  *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003)

(finding the ALJ was not bound to develop the medical record for the two years

after the claimant filed his application for benefits).  Also, the ALJ has no duty to

order additional medical evidence or a consultative examination where the

evidence in the record is sufficient to support the ALJ's disability determination.

*See Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999) (the ALJ was not

obligated to seek additional medical testimony because evidence in record was

sufficient to determine whether claimant was disabled); *Holladay v. Bowen*, 848

F.2d 1206, 1210 (11th Cir. 1988) (In fulfilling his duty to conduct a full and fair

---

[7]*See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.06.

inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to render a decision). "[T]he claimant bears the burden of proving that [she] is disabled, and, consequently, [she] is responsible for producing evidence in support of [her] claim." *Ellison*, 355 F.3d at 1276. An ALJ is not required to develop evidence to prove a claimant's claim or otherwise act as her counsel. *See Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982).

A claimant must also show prejudice before this court will remand to the ALJ for further development of the record. *See Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997).

## 1.    Psychological Evaluation

Plaintiff asserts that because "the secondary diagnosis causing her disability is anxiety related disorders, and she has been treated for anxiety and panic attacks," the ALJ should have ordered a psychological evaluation. (Doc. 9 at 19). The ALJ fully discussed the evidence concerning Plaintiff's anxiety and panic attacks. He evaluated Plaintiff's testimony and the records from her medical providers. (R. 57-59). The ALJ gave great weight to the objective medical findings of Plaintiff's treating sources. (R. 61 ("The undersigned affords great weight to the objective medical findings of the claimant's treating sources....").

The ALJ also specifically found that "[t]he severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listing 12.06." (R. 55). Plaintiff has not shown that the ALJ failed to consider a limitation or other evidence she advanced during the review process, including at her hearing, that impacts the mental assessment of her RFC. To the contrary, the ALJ fully addressed her claims, symptoms, and evidence.

### 2.    Physical Evaluation

Plaintiff also asserts that because she suffers from COPD, "the ALJ should have ordered a pulmonary function test." (Doc. 9 at 20). The Commissioner responds that the argument is unavailing because the record was sufficient for the ALJ to assess Plaintiff's condition. (Doc. 10 at 14-15).

The ALJ considered Plaintiff's COPD diagnosis. He found the condition to be a non-severe impairment. (R. 55, 429). Plaintiff testified that she had only occasional breathing problems and that she did not take medication for this problem. (R. 55, 78). The ALJ considered that Plaintiff's treatment history indicated that her lungs were consistently found to be clear. (R. 55, 321, 324, 339-40, 375, 380, 383, 386, 391, 396, 400, 404, 408, 412, 416, 458). The ALJ also noted that there was no evidence that Plaintiff had sought continuing and ongoing treatment for COPD. (R. 55). Plaintiff did not adequately challenge

these findings so as to require additional testing.  This claim is without merit.

## C.    Past Relevant Work

Plaintiff argues that "[t]he ALJ did not consider all of the duties of [her] past work and evaluate [her] ability to perform those duties in spite of [her] impairments."  (Doc. 9 at 23).  The Commissioner responds that this argument lacks merit because the record contains evidence about how she performed her janitorial job.  (Doc. 10 at 16).  Additionally, the Commissioner argues that Plaintiff does not challenge the ALJ's finding that she could perform other work. (*Id*.)

The Eleventh Circuit Court of Appeals has stated:

> Although a claimant bears the burden of demonstrating an inability to return to his past relevant work, the [Commissioner] has an obligation to develop a full and fair record.  Where there is no evidence of the physical requirements and demands of the claimant's past work and no detailed description of the required duties was solicited or proffered, the [Commissioner] cannot properly determine whether the claimant has the residual functional capacity to perform his past relevant work.

*Waldrip v. Comm'r of Soc. Sec.*, 379 F. App'x 948, 953 (11th Cir. 2010) (citing *Schnorr v. Bowen*, 816 F.2d 578 (11th Cir.1987)).

In this case, the Commissioner states, "To help determine if Plaintiff could perform her past relevant work given her RFC, the ALJ obtained testimony from a VE."  (Doc. 9 at 15).  Plaintiff argues that the ALJ improperly relied on the VE's

testimony to find that she could perform her past relevant work because the ALJ did not consider all of her duties or evaluate her ability to perform those duties in light of her impairments. (Doc. 9 at 23-27 (Issue 4)).

This is not a case "[w]here there is no evidence of the physical requirements and demands of the claimant's past work." *Waldrip*, 379 F. App'x at 953. The record does contain information about how Plaintiff performed her past work as a janitor. She stated in her work history that (1) she was a janitor from 1997 to 2011 (R. 73-74, 264); (2) she did not use machines, tools or equipment, did not use technical knowledge or skills, and did not do any writing, complete reports, or perform similar duties as part of the job (*id*. at 265-68); (3) the job included walking, kneeling, and crouching (*id*.); (4) she took out the garbage (*id*.); (5) the heaviest weight she lifted was less than 10 pounds and she frequently lifted less than 10 pounds (*id*.); and (6) she did not supervise anyone and was not a lead worker (*id*.). At her administrative hearing, the ALJ asked Plaintiff about her janitorial duties. (R. 89-90). Plaintiff testified that she "didn't have to do nothing but fix the mop water and the bucket" and "wring the mop out." (R. 89). Plaintiff also testified that she did not have to mop every day and that "often times we had –we just had to vacuum the rooms that had carpet in them." (R. 90). She further testified that she did not "even lift up to 25 pounds on a regular basis." (*Id*.) The

VE testified that she had sufficient information to given an opinion as to Plaintiff's past relevant work. (R. 90). The VE then testified that a janitor job is classified as unskilled, medium work, but that Plaintiff performed it at the light level. (*Id*.)

The foregoing testimony constitutes substantial evidence that Plaintiff could perform her past relevant work as a janitor as it is generally performed in the national economy. Plaintiff has offered nothing to counter this finding. Simply arguing that the ALJ improperly relied on the testimony of the VE is insufficient to support a remand under these circumstances.

**D.    Appeals Council's Failure to Review New Evidence**

Plaintiff next argues that the AC failed to review her new submissions that were dated after the ALJ's decision. (Doc. 9 at 13-19). The Commissioner argues that the AC did not err in its consideration of the evidence. (Doc. 10 at 18-26).

After the date of the ALJ's decision, Plaintiff submitted the following medical records for consideration by the AC:

(1) Riverview Regional Medical Center records dated February 8, 2005, through December 2, 2009 (R. 459-526);

(2) Gadsden Regional Medical Center records dated June 12, 2012, through January 3, 2014 (R. 527-46);

(3) Etowah Free Community Clinic dated September 22, 2014 through December 11, 2014, and May 19, 2015 through September 9,

2015 (R. 9-11, 574);

(4) CED Mental Health Center records dated March 2, 2015 through
April 16, 2015 (R. 12-30); and

(5) a psychological evaluation and mental health source statement
from Gadsden Psychological Services (Dr. David Wilson). (R.
548-52).

(R. 6).

The applicable standard is well-settled in the Eleventh Circuit. A "'claimant

is allowed to present new evidence at each stage of this administrative process,'

including before the Appeals Council. *Ingram v. Comm'r of Soc., Sec. Admin.*,

496 F.3d 1253, 1261 (11th Cir. 2007). The Appeals Council has the discretion not

to review the ALJ's denial of benefits. *See* 20 C.F.R. § 416.1470(b). But the

Appeals Council 'must consider new, material, and chronologically relevant

evidence' that the claimant submits. *Ingram*, 496 F.3d at 1261; *see also* 20 C.F.R.

§§ 404.970(b), 416.1470(b)." *Washington v. Soc. Sec Admin.*, 806 F.3d 1317,

1320 (11th Cir. 2015). New evidence is "material" if "there is a reasonable

possibility" that it "would change the administrative result." *Id.* at 1321 (citing

*Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987)). In reviewing such evidence,

the court considers the record as a whole in determining whether substantial

evidence supports the final decision of the Commissioner. *See Ingram*, 496 F.3d

at 1266-67.

Plaintiff first argues that the AC did not look at the psychological evaluation and mental health source statement prepared by Dr. David Wilson. (Doc. 9 at 14).[8] This is not correct. The AC stated it considered the "additional evidence listed on the enclosed Order of Appeals Council." (R. 2). The Order of Appeals Council lists Dr. Wilson's evaluation and statement along with the other medical records, which were made a part of the administrative record. (R. 6, 548-52). Thus, the court finds that the AC did consider this evidence.[9] Accordingly, this court must consider the same as well.

Dr. Wilson examined Plaintiff in March 2015 – four months after the ALJ's decision. (R. 46, 548). Plaintiff complained of anxiety/panic attacks, headaches, depression, COPD, GERD, and thyroid problems. (R. 548). She stated she was in special education during school, but that she received a "regular diploma." (R.

---

[8] The documents are located in the record at R. 548-52.

[9] During the pendency of this matter, Plaintiff submitted a supplemental authority concerning the AC's handling of certain evidence. (Doc. 15). Specifically, she cited the recent Eleventh Circuit case of *Hunter v. Soc. Sec. Admin.*, 705 F. App'x 936 (11th Cir. 2017). In *Hunter*, the court held that the AC erred in failing to consider a subsequent medical opinion from a psychologist – Dr. Wilson – when he had reviewed the claimant's statements and medical records from the relevant period and specifically stated that his opinions related back to the date of the ALJ's decision. *Id*. at 240. The Commissioner asserts that *Hunter* is inapposite. (Doc. 16 at 3). The court agrees. Unlike the situation in *Hunter*, the AC considered Dr. Wilson's opinion, but found that it did not provide a basis for changing the ALJ's decision. The same conclusion applies with regard to the records from Riverview Regional Medical Center, Gadsden Regional Medical Center, and Etowah Free Community Clinic (Sept. 22, 2014 through Dec. 11, 2014), which were considered by the AC. (R. 2, 6).

549).  Dr. Wilson diagnosed Plaintiff with a panic disorder with agoraphobia, a depressive disorder, and an intellectual disability, and assigned her a Global Assessment of Functioning ("GAF") score of 45, indicating that she suffered from serious functional problems.  (R. 551).  *See* Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 30, 32 (4th ed. text rev. 2000) (a score between 41 and 50 indicates serious symptoms or "any serious impairment in social, occupational, or school functioning.").  Dr. Wilson opined that Plaintiff's ability to withstand the pressures of day-to-day occupational functioning was highly impaired and that she would have great difficulty in working in any type of setting.  (R. 551).

The Commissioner argues that Dr. Wilson's opinion regarding Plaintiff's ability to work is not a medical opinion but rather a legal determination reserved for the Commissioner.  *See* 20 C.F.R. § 416.927(d); *see also Clough v. Soc. Sec. Admin.*, 636 F. App'x 496 (11th Cir. 2016) (holding a doctor's conclusion that the claimant was disabled did not change the outcome or warrant overturning the Appeals Council's denial of review).  The court agrees, but must still consider Dr. Wilson's medical observations and conclusions.

As already discussed, the ALJ spent a considerable time evaluating Plaintiff's anxiety and panic attack evidence.  (R. 57-59).  Dr. Wilson's diagnosis

of panic disorder with agoraphobia is consistent with the ALJ's finding that Plaintiff had a severe anxiety impairment. (*See* R. 51). As will be discussed further, it does not change the result in this case for a number of reasons.

First, to the extent that Dr. Wilson found that Plaintiff had an intellectual impairment, that is not consistent with the other evidence. In January, March and April 2015, the CED Mental Health Center did not assess her with an intellectual disability. (R. 13 (Consumer Diagnosis Form), 20 (Screening/Triage/Referral Form), 21 (Problem Assessment Form (Significant Problems Section)), 24 (Problem Assessment Form (Diagnosis Description Section)), 27 (no notations in the "Special Needs Assessment" section of Problem Assessment Form).[10]

Second, Plaintiff did not allege an intellectual disability as part of her disability application or at her administrative hearing. (R. 72-89, 255, 274). It is also absent from her other medical records.

Third, her GAF score is of limited value. "The Commissioner [has] ... declined to endorse the GAF scale for use in the Social Security and SSI disability programs, and ... [has] indicated that GAF scores have no direct correlation to the severity requirements of the mental disorders listings." *Wind v. Barnhart*, 133 F.

---

[10]The court does note that one document in the CED records shows that Plaintiff's educational history included "[s]pecial [e]ducation." (R. 22).

App'x 684, 692 n.5 (11th Cir. 2005) (internal quotations omitted) (citing 60 Fed. Reg. 50746, 50764–65 (Aug. 21, 2000)). While a GAF score distills an individual's symptoms and functioning to a single number, an ALJ assessing a claimant's RFC must consider the claimant's "'functional limitations or restrictions and assess ... her work-related abilities on a function by function basis.'" *Freeman v. Barnhart*, 220 F. App'x 957, 959 (11th Cir. 2007) (quoting SSR 96-8p, 1996 WL 374184). The court also notes that the latest edition of the Manual of Mental Disorders has abandoned the GAF scale because of "its conceptual lack of clarity ... and questionable psychometrics in routine practice." Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013). This evidence is not sufficient to alter the decision of the ALJ.

Fourth, Dr. Wilson's "Mental Health Source Statement" is of little value. Therein, in conclusory fashion, he states that Plaintiff cannot (1) understand, remember or carry out very short and simple instructions; (2) maintain attention, concentration and/or pace for at least two hours; (3) perform activities within a schedule, maintain regular attendance, and be punctual; (4) sustain an ordinary routine without special supervision; (5) accept instructions and respond appropriately to criticism from supervisors; and (6) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. (R. 552). He

also states Plaintiff would fail to report for work all 30 days within a 30-day period because of her psychological symptoms. (*Id*.) He further states that her limitations existed back on December 31, 2011. (*Id*.) In sum, he concludes that Plaintiff has not been able to perform even the simplest of work since her onset date.

Dr. Wilson's severe assessment of Plaintiff's abilities is not supported by the remainder of the record. Plaintiff reported in her January 31, 2013 Function Report that she could pay attention all day and did not have difficulty with her memory, understanding or concentration or completing tasks. (R. 285-290). She also did not indicate on that form that her condition affected her ability to follow instructions. (*Id*.) Additionally, as discussed previously, she in fact did work after her onset date during 2012. (*See* R. 59, 73-74 (disaster relief work), 245 ($1,687.50 in income)). Accordingly, the court finds that the AC did not err in finding that "this information does not provide a basis for changing the [ALJ's] decision." (R. 2).

Turning to the other medical records, including the records from (1) Riverview Regional Medical Center dated February 8, 2005, through December 2, 2009 (R. 459-526); (2) Gadsden Regional Medical Center dated June 12, 2012, through January 3, 2014 (R. 527-46); (3) Etowah Free Community Clinic dated

September 22, 2014 through December 11, 2014, and May 19, 2015 through September 9, 2015 (R. 9-11, 574); and (4) CED Mental Health Center dated March 2, 2015 through April 16, 2015 (R. 12-30), the court finds that they do not provide a basis for changing the ALJ's decision.

Concerning the records from Riverview, the court finds that they predate Plaintiff's alleged disability onset date by two years and do not include treatment for her allegedly disabling conditions. (R. 74-75, 255, 459-526). To the contrary, some of the records demonstrate that Plaintiff's behavior was normal and appropriate for her situation. (*See, e.g.*, R. 469, 483 (noting her ability and willingness to learn)). They also tend to confirm her alcohol consumption and doctor's directions to reduce her alcohol intake. (*See* R. 502-03).

Concerning the records from Gadsden Regional Medical Center, the court finds that they provide no support for Plaintiff's contention of disabling circumstances. The records show that in May 2013, Plaintiff was treated for complaints of chest pain and anxiety, but was released the same day with improved pain, normal sinus rhythm, and in stable condition. (R. 527-33). In January 2014, Plaintiff was treated for complaints of a headache of "moderate intensity," but was released the same day after her pain improved. (R. 537-46). The medical notes also reflect that while the symptoms began two months ago, she

had been out of her blood pressure medication for the past week. (R. 541). An imaging study of Plaintiff's head area revealed no acute intra-cranial process. (R. 545).

Concerning the additional records from Etowah Free Valley Clinic following the ALJ's decision, they show that in December 2014, Plaintiff was seen for complaints of a headache, insomnia, and worsening panic attacks. (R. 547). Plaintiff was diagnosed with bronchitis, hypertension, anxiety, and insomnia. (*Id*.) While the entry reflects worsening panic attacks, this is insufficient to challenge the ALJ's decision. This is particularly true because the ALJ previously noted her anxiety, headaches, and panic attacks as recently as May 2014 – five months before the decision to deny Plaintiff benefits. (R. 54).

Concerning the remaining records – CED Mental Health Center records dated March 2, 2015 through April 16, 2015 (R. 12-30) and the Etowah Free Community Clinic records dated May 19, 2015 through September 9, 2015 (R. 2, 9-11) – the AC "looked at" them, but declined to consider the records. (R. 2). The AC concluded that these records contained information about a period after the ALJ's decision and did not affect the ALJ's decision that she was not disabled through October 21, 2014. (R. 2). The court finds this to be correct.

The AC is required to consider additional evidence only where it relates to

the period on or before the date of the administrative law judge hearing decision. 20 C.F.R. §§ 404.970(b), 416.1470(b). Here, the AC's conclusion is correct in that this last group of records concerns a subsequent period and the records are not material and chronologically relevant evidence to the period of the decision. *See Ingram*, 496 F.3d at 1261. When the record is considered in its entirety, this evidence would not change the ALJ's decision, which is supported by substantial evidence. *See id*. at 1266-67. The Etowah Free Community Center records show that twice during 2015, Plaintiff complained of anxiety during the relevant period. (R. 9-11). The ALJ thoroughly documented that Plaintiff was still suffering from hypertension and anxiety. These records add little, other than to show her condition persisted. At one point, the records reflect that Plaintiff was non-compliant with regard to her medication. (R. 10).

The CED records also show that the anxiety continued and that Plaintiff had additional complaints of paranoia and depression. (R. 17-30). They also show, however, that she had the ability to manage her daily affairs and that her drinking was under control.[11] (R. 18, 26, 29).

In sum, the court finds that even if the AC had considered this evidence, it

---

[11]This is also evidenced in Dr. Wilson's "Psychological Evaluation," which provides that Plaintiff "used to drink and she stopped about 8 months ago [(summer 2014)] and '[she] would drink 2 or 3 beers' but not daily.'" (R. 549).

would have been insufficient to alter the ALJ's decision.  Plaintiff is entitled to no relief on this claim.

## VI.  CONCLUSION

For the reasons set  forth above, the undersigned concludes that the case is due to be affirmed.  An appropriate order will be entered separately.

**DONE,** this the 25th day of January, 2018.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge